Catherine Cabalo (CA Bar No. 248198)
Khushpreet Mehton (CA Bar No. 276827)
PEIFFER WOLF CARR KANE
CONWAY & WISE, LLP
555 Montgomery Street, Suite 820
San Francisco, CA 94111
Tel:  (415) 766-3592
Fax:  (415) 840-9435
Email: ccabalo@peifferwolf.com
         kmehton@peifferwolf.com

*Attorneys for Plaintiff Pearl Hancock*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PEARL HANCOCK,<br><br>            Plaintiff,<br><br>      vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO; TEGSCO, LLC (dba AUTORETURN); and DOES 1-15, Inclusive, et al.<br><br>            Defendants | Case No. 3:24-cv-01927-CRB<br><br>***Civil Rights***<br><br>**AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES:**<br>1. Violation of Title II of the Americans with Disabilities Act;<br>2. Violation of Title III of the Americans with Disabilities Act;<br>3. Violation of Section 504 of Rehabilitation Act;<br>4. Violation of California Government Code Section 11135; and<br>5. Violation of the Unruh Civil Rights Act.<br><br>**DEMAND FOR JURY TRIAL** |

## **INTRODUCTION**

1.      This is a civil rights action for discrimination based on disability. Plaintiff Pearl Hancock seeks injunctive and declaratory relief, damages, attorney's fees, costs, and litigation expenses pursuant to the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act ("Rehab Act"), California Unruh Civil Rights Act ("Unruh Act"), and

1. California Government Code Section 11135 ("Section 11135") against Defendants City and County of San Francisco (the "City"); Tegsco, LLC dba AutoReturn ("Tegsco"); and Does 1-10, inclusive (collectively, "Defendants"), as the owners, operators, lessees, and/or lessors of a vehicle impound lot located at 450 7th Street, San Francisco, CA 94103 (hereinafter the "Impound Lot").

2. Through the San Francisco Municipal Transit Agency ("SFMTA"), the City removes illegally parked and abandoned vehicles from San Francisco streets. In the process of clearing the streets of these vehicles, the City and its contractor, Tegsco, also provide the service of storing and returning towed vehicles to their owners.

3. Plaintiff Pearl Hancock is physically disabled, and at all times relevant in this Complaint, required use of mobility aids and devices, including a knee scooter. When she attempted to retrieve her car that had been towed by SFMTA to the Impound Lot, she encountered several physical barriers at the Impound Lot and was denied necessary and reasonable accommodations for her physical disabilities.

4. At all times relevant herein and continuing, Plaintiff was denied equal protection of the law and was denied civil rights under state and federal law. As set forth in detail therein, Plaintiff was denied rights to full and equal access to Defendants' Impound Lot and to the benefits of programs, services, and activities offered by the City because the Impound Lot and the City's programs, services, and/or activities were not accessible to and useable by persons with disabilities, such as Plaintiff who requires accessible policies, procedures, practices, and facilities. The denial continued despite Defendants having actual notice of the inaccessible policies, conditions, and/or physical structures, demonstrating their deliberate indifference and/or intentional discrimination toward Plaintiff.

5. Plaintiff seeks injunctive relief to require Defendants to make the Impound Lot accessible to disabled persons and to ensure the programs, services, and activities offered by Defendants be provided in a non-discriminatory manner to mobility disabled persons, including but not limited to: providing and maintain safe and accessible access to the Impound Lot and modifying programs, procedures, services, activities, and/or training to provide reasonable

1  accommodations/modifications upon request at the Impound Lot. Plaintiff seeks damages and
2  injunctive relief requiring provision of access under the ADA and the Rehab Act and injunctive
3  relief for full and equal access and statutory damages under California law. Plaintiff also seeks
4  declaratory relief and recovery of reasonable statutory attorney's fees, litigation expenses and
5  costs under federal and state law.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for violations of federal law and supplemental jurisdiction for claims brought under parallel California law, arising from the same nucleus of operative facts pursuant to 28 U.S.C. § 1367.

## VENUE

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b). The real property which is the subject of this action is in this district, and Plaintiff's causes of action arose in this district.

8. <u>Intradistrict Assignment</u>: This case should be assigned to the San Francisco intradistrict, as the real property which is the subject of this action is in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

## PARTIES

9. Plaintiff Pearl Hancock ("Plaintiff" or "Mrs. Hancock") is a resident of Vallejo, California. Mrs. Hancock has had several recent medical procedures including major back surgery. As a result of her surgeries and medical condition, Mrs. Hancock suffers from continuing and regular pain and discomfort. Mrs. Hancock has difficulty standing for long or extended periods of time and walking long distances. Unfortunately, Mrs. Hancock anticipates she will likely require additional medical procedures. At all times relevant to this Complaint, she is qualified as a "person with a disability" within the meaning of the ADA, Rehab Act, and California law. Mrs. Hancock has been issued a California state placard and/or license plate for disabled parking ("DF687DP" mounted on her 2004 Lincoln Town car), entitling her to park in a properly configured disabled accessible parking space.

10. Defendant City is public entity municipality located in California. The City is subject to Title II of the ADA, the Rehab Act, and to all other state or federal requirements referred to in

this Complaint. The City is (and at all times relevant to this Complaint was) the owner, operator, lessor, and/or lessee of the businesses, properties, facilities, and/or portions of the Impound Lot.

11. Defendant Tegsco is a limited liability company organized under the laws of the state of California, with a principal address in San Francisco, California. Tegsco provides towing management services for the City. Tegsco is (and at all times relevant to this Complaint was) the owner, operator, lessor and/or lessee of the businesses, properties, facilities, and/or portions of the Impound Lot. Tegsco and the Impound Lot are public accommodations as defined by Title III of the ADA and business establishments as defined by the Unruh Act.

12. Defendants Does 1-5 are public entities subject to Title II of the ADA who own and/or operate the Impound Lot and/or own and/or operate the property on which the Impound Lot was constructed. Defendant Does 6-10 are the employees and/or agents of the City, including without limitation SFMTA. Defendant Does 11-15 are the employees and/or agents of Tegsco.

13. The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants Does 1-15 are unknown to Plaintiff, who therefore sues said Doe defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Doe defendants is in some manner legally responsible for the events and happenings herein referred to, which caused injury and damages to Plaintiff as herein alleged. Plaintiff prays for leave of Court to amend this Complaint to show such true names and capacities when the same have been ascertained.

14. Plaintiff does not know the relative responsibilities of the City, Tegsco, and Does 1-15 in the ownership and operation of the Impound Lot. Plaintiff is informed and believes, however, that at all times mentioned here, each of the Defendants herein was the agent, servant, employee, and/or representative of each of the other Defendants and performed all acts and omissions stated herein within the scope of such agency or employment or representative capacity and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and was responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages complained of herein. All actions alleged herein were done with the

knowledge, consent, approval, and ratification of each of the Defendants here, including their managing agents, owners, and representatives.

## FACTUAL ALLEGATIONS

15.  On October 26, 2022, Mrs. Hancock was recovering from foot surgery at her home in Vallejo, CA. At the time, Mrs. Hancock was experiencing significant pain and discomfort using a knee scooter to ambulate as she recovered. Without her knowledge or authorization, a family member took her 2004 Lincoln Town Car and traveled to San Francisco, CA where it was street parked. The vehicle was subsequently towed from street parking and taken to the Impound Lot.

16.  When Mrs. Hancock learned that the vehicle was in the Impound Lot, she called the Impound Lot office and was informed that the vehicle would have to be retrieved within one hour (before they closed) or the price would essentially double from increased fees for an additional day of storage.

17.  Mrs. Hancock was not able to drive herself and was under doctors' orders to rest during her recovery from surgery. As a result, Mrs. Hancock's son, Chris Hancock ("Chris"), had to pick Mrs. Hancock up from her residence in Vallejo and drive her to the Impound Lot in San Francisco within approximately one hour (before 8:00 pm). Chris's then-fiancé/now wife, Lacy, accompanied them. At the same time, Mrs. Hancock's husband, Jeff Hancock ("Mr. Hancock"), rushed to retrieve a spare set of vehicle keys from Mill Valley, CA (because the unauthorized user of her vehicle had taken the original set of keys). Mr. Hancock traveled separately to meet his wife and son at the Impound Lot after retrieving the spare keys.

18.  When Chris and Mrs. Hancock arrived at the Impound Lot, they noticed there was no designated disabled parking area or other accessible unloading area for Mrs. Hancock to use to safely unload from the passenger side of the vehicle. Chris pulled into the Impound Lot's entry/exit driveway and stopped in front of the gate to allow Mrs. Hancock to exit his vehicle safely. Almost immediately, a large man who worked at the Impound Lot appeared and began yelling at Chris and Mrs. Hancock to move their vehicle and not to park there. Chris explained that Mrs. Hancock was disabled and using a knee scooter because she was in a great deal of pain and that they were to pick up Mrs. Hancock's vehicle. Chris asked the employee if he could stop

1  there temporarily to drop Mrs. Hancock off and then move the vehicle. The employee responded
2  with an emphatic "NO!" and told Mrs. Hancock and Chris to leave or he would call the police
3  and have them towed.

4  19.   Chris pled with the employee and reiterated that Mrs. Hancock was disabled and they
5  were running short on time to retrieve her vehicle before the Impound Lot closed. Chris even
6  offered to allow the Impound Lot employees to hold his keys while he helped Mrs. Hancock
7  unload from the vehicle. Despite Chris' repeated requests for this very reasonable
8  accommodation to allow Mrs. Hancock to safely unload from the vehicle, the Impound Lot
9  employee continued to refuse and threatened to call police and/or tow the vehicle if it was not
10 immediately moved.

11 20.   Chris was able to find a parking space on the street, but it was difficult for Mrs. Hancock
12 to unload and deploy her knee scooter in this location. Being denied the accommodation of
13 unloading close to the Impound Lot also made Mrs. Hancock fear she would not reach the
14 Impound Lot before it closed at 8:00 pm and would run out of time to retrieve her vehicle. It was
15 almost 8:00 pm and the area felt dangerous, but Chris, Lacy, and Mrs. Hancock had no choice
16 but to travel the two blocks on uneven sidewalk and in the dark to get back to the same Impound
17 Lot gate they had been threatened at earlier. When they arrived at the Impound Lot gate, the same
18 employee who had threatened to call the police and tow their vehicle informed Mrs. Hancock
19 that she could not retrieve her vehicle from the Impound Lot gate, but rather had to go around to
20 the front door of the Impound Lot office.

21 21.   Worried about her physical ability to get into the office in enough time and the pain and
22 discomfort she was experiencing after traveling with her knee scooter from Chris' car to get to
23 the Impound Lot, Mrs. Hancock and Chris asked if Mrs. Hancock could use the nearby and
24 visible side door to enter the Impound Lot office. The employee refused this request and told
25 them to use the front door. At this point, the employee could see Mrs. Hancock using the knee
26 scooter to ambulate. Mrs. Hancock and Chris did not see any directional or informational signage
27 which could indicate which way the accessible route of travel or entrance was from the gate, so
28 they made their way in the dark in the general direction the Impound Lot employee had indicated.

1  Again, with difficulty and discomfort, Mrs. Hancock maneuvered her knee scooter in the dark
2  on uneven sidewalk to the entrance door.

3  22.      With only minutes until closing, Mrs. Hancock entered the Impound Lot office and stood
4  in line with Chris' assistance. There was no sitting area or space for a disabled person to wait in
5  the small lobby. Mrs. Hancock was having difficulty steadying herself on the scooter and asked
6  for a chair as soon as she reached the window. The employee at the window was pleasant but
7  told Mrs. Hancock he would have to ask someone about her requested chair accommodation. The
8  employee left the window, and when he returned, he informed Mrs. Hancock that the Impound
9  Lot did not have a chair for her to use and they could not provide that kind of accommodation.
10 Mrs. Hancock was forced to complete the required paperwork in pain and worried that she may
11 collapse if she could not continue to balance on her knee scooter.

12 23.      While Mrs. Hancock was completing the paperwork, Chris asked if there was a restroom
13 he could use. Chris was told there was no public restroom. After waiting several minutes, Chris
14 couldn't wait any longer and had to leave Mrs. Hancock to look for a nearby public restroom.  It
15 took Chris approximately 20 minutes to locate, use, and return from using the restroom. When
16 Chris returned, he found Mrs. Hancock was still waiting for her vehicle's return to be processed.
17 At this point, Mrs. Hancock was in excruciating pain, as she was forced to stand using her knee
18 scooter for approximately 30 minutes or more at this point.

19 24.      While they were waiting, Mrs. Hancock noticed there was a sliding door which the
20 employees used to go in and out of the building and to the Impound Lot yard where vehicles were
21 stored. When her vehicle return was processed, Mrs. Hancock made her way towards this sliding
22 door to retrieve her car. The employee at the front desk yelled at Mrs. Hancock to stop and not
23 go through the sliding door. The employee instructed her to leave the building and walk back to
24 the Impound Lot gate, which had originally turned them away.

25 25.      Mrs. Hancock explained that the walk from the gate had been difficult for her in the dark
26 and on the uneven pavement with her knee scooter. Mrs. Hancock asked if she could use the
27 sliding door to reach her vehicle more easily and safely. Mrs. Hancock could see her vehicle from
28 this door and could not understand why the Impound Lot would require someone who is

obviously disabled and using a mobility assistive device to take a longer route than could be reasonably accommodated without risk to their safety (since the vehicle had already been released to Mrs. Hancock). Despite Mrs. Hancock's efforts and explanation, the Impound Lot employees refused her requests for accommodation.

26. Mrs. Hancock left the office and made her way back to the Impound Lot gate. At the gate, the Impound Lot employee there wanted to see her retrieval papers and told Mrs. Hancock to wait for several minutes before letting her enter the Impound Lot with Chris. When Mrs. Hancock complained about having to wait longer to retrieve her vehicle, which she and Chris could clearly see was ready to be retrieved without obstruction, the employee informed her that he did not make the Impound Lot's policies and that he could not make any accommodation for her. When Mrs. Hancock told the Impound Lot employee that she could not stand any longer as she was in excruciating pain, she was finally allowed to enter the Impound Lot to retrieve her vehicle.

27. At this point, it had taken Mrs. Hancock and her family at least one hour to retrieve her vehicle. Mrs. Hancock was frustrated, exhausted, defeated, humiliated, and in excruciating pain from her disability and the conditions she encountered at the Impound Lot. Although Mrs. Hancock made plans with her family to have dinner in San Francisco after retrieving her vehicle, she felt physically ill and continued to experience severe pain from being forced to travel and stand on her knee scooter. Mrs. Hancock canceled her dinner plans and went immediately to her home in Vallejo to recover from the physical pain caused by the Impound Lot ordeal, which she feared would negatively affect her recovery from surgery.

28. As a result of the great difficulties Plaintiff experienced at the Impound Lot, she is currently deterred from street parking in San Francisco and/or utilizing valet services who street park for fear of being towed and forced to return to the Impound Lot to retrieve a vehicle. Mr. Hancock and Mrs. Hancock travel to San Francisco for regular dental services at the University of the Pacific Arthur A. Dugoni School of Dentistry. They also like to frequent one of their favorite restaurants: House of Prime Rib located at 1906 Ven Ness Ave, San Francisco, CA 94109.

29. On or about August 30, 2023, Mr. Hancock and Mrs. Hancock rode with friends to the House of Prime Rib for their 54th wedding anniversary rather than take their own vehicle (due to apprehension above using the valet service at the restaurant because valet have street parked their vehicles in the past). The loss of autonomy and independence of driving themselves to their wedding anniversary celebration was embarrassing and humiliating.

30. On or about September 18, 2023, Plaintiff served the City with an application to file a late claim. Shortly thereafter, on or about October 2, 2023, the City denied Plaintiff's application via its Notice of Action Upon Claim.

31. Plaintiff's goal in this suit is positive: to make the Impound Lot accessible and free of architectural barriers to access with policies, procedures, and practices to ensure maintenance of physical elements in a manner fully accessible to persons with mobility disabilities.

32. Plaintiff seeks an injunction to protect the rights of disabled persons under federal and state law. Plaintiff also seeks an award of statutory damages, compensatory damages, treble damages, punitive damages, and an award of statutory attorney fees, litigation expenses and costs.

### FIRST CAUSE OF ACTION:
### VIOLATION OF TITLE II OF THE ADA
### [42 U.S.C. § 12101, *et seq.*]
### (Against All Defendants)

33. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporates them herein by reference as if separately repled.

34. At all times herein mentioned, Mrs. Hancock was a qualified individual with a disability as defined by the ADA, since she has impairments that substantially limit the major life activities of standing and walking. She is entitled to the protections of the "Public Services" provision of Title II of the ADA, Subpart A, which prohibits discrimination by any "public entity", including state or local government, as defined by 42 U.S.C. § 12131.

35. At all times relevant to this action, the United States Department of Justice ("DOJ")

1  regulations implementing Title II of the ADA were in full force and effect and applied to the
2  Defendants' conduct.

3  36.     Public entity defendant City and its contractor, defendant Tegsco (by "standing in the
4  shoes" of the City by operating the Impound Lot), failed in their responsibilities under Title II of
5  the ADA to provide its services, programs and activities in a full and equal manner to disabled
6  persons described herein, including without limitation: failing to construct and/or alter/modify
7  the Impound Lot in compliance with applicable federal accessibility standards; failing to ensure
8  that the Impound Lot is properly accessible to and usable by mobility disabled persons; failing
9  to ensure that the Impound Lot's related public facilities and public accommodations, as
10 described herein, are accessible to and usable by mobility disabled persons; failing to remove
11 procedural barriers at the Impound Lot and/or make reasonable modifications as requested by
12 Mrs. Hancock that would not fundamentally alter the nature of the services provided at the
13 Impound Lot; failing to comply with the requirements and standards in effect for maintaining the
14 Impound Lot's accessibility; failing to implement and maintain policies at the Impound Lot to
15 ensure they are accessible and usable by mobility disabled persons; and/or failing to modify its
16 programs, services, activities, procedures, practices, and/or training to make the Impound Lot
17 accessible to and useable by mobility disabled persons, including Mrs. Hancock. As a proximate
18 result of Defendants' actions and omissions, Plaintiff was discriminated against in violation of
19 Title II of the ADA and of the regulations adopted to implement the ADA. Plaintiff suffered
20 injuries, compensable under Title II for intentional acts of the City, including deliberate
21 indifference, and has suffered physical, mental and emotional damages, including difficulty,
22 discomfort or embarrassment.

23 37.     On information and belief, as of the date of filing this Complaint, the Impound Lot
24 continues to be inaccessible for safe and independent use by physically disabled persons such as
25 Mrs. Hancock. Mrs. Hancock is deterred from parking in public parking areas operated by the
26 City and/or use services which would valet park a vehicle in a location where it could be towed
27 if inadvertently parked in the wrong place or for too long. However, once the legally-required
28 access has been provided at the Impound Lot, Mrs. Hancock intends to continue her regular visits

to San Francisco, including for regular meals at the House of Prime Rib and to enjoy time generally in San Francisco with her family. Defendants' acts have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court.

38. Per § 12133 of the ADA, as a result of such discrimination, in violation of § 12132 of the ADA, Plaintiff is entitled to the remedies, procedures and rights set forth in Section 505 of the Rehabilitation Act of 1973 (29 U.S.C. § 794a).

39. As set forth above, Defendants discriminated against Plaintiff on the basis of her disability by denying Plaintiff meaningful access to the services, programs, activities, benefits, and facilities Defendants offer to other individuals at the Impound Lot.

40. Plaintiff's injuries are ongoing so long as Defendants do not modify their policies and procedures, remove architectural barriers, and provide meaningful access to services, programs, activities, benefits, and facilities at the Impound Lot to Plaintiff and other persons with similar mobility disabilities.

## SECOND CAUSE OF ACTION:

## VIOLATION OF TITLE III OF THE ADA

**[42 U.S.C. § 12101, *et seq.*]**

**(Against Defendant Tegsco and Doe Defendants 11-15)**

41. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all the paragraphs of this Complaint and incorporates them herein as if separately repled.

42. At all times relevant to this action, the DOJ regulations implementing Title III of the ADA were in full force and effect and applied to the Defendants' conduct.

43. Plaintiff has reasonable grounds for believing she will be subjected to discrimination each time that she may return to the Impound Lot. She is deterred from parking in public parking areas operated by the City and/or use services which would valet park a vehicle in a location where it could be towed if inadvertently parked in the wrong place or for too long.

44. The Impound Lot, the subject property, and facilities are one of the "private entities" which are considered "public accommodations" for purposes of Title III of the ADA, which

include but are not limited to a "service establishment." 42 U.S.C. § 12181(7)(F).

45. The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36, *et seq.*

46. Plaintiff alleges on information and belief that the Impound Lot was designed and constructed (or both) after January 26, 1993—independently triggering access requirements under Title III of the ADA. Here, Defendants violated the ADA by designing and/or constructing the Impound Lot in a manner that did not comply with federal and state disability access standards even though it was practicable to do so.

47. The removal of each of the barriers complained of by Plaintiff as herein alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.

48. Plaintiff alleges on information and belief that the Impound Lot was modified after January 26, 1993. Any alterations, structural repairs or additions since January 26, 1993 have independently triggered requirements for removal of barriers to access for disabled persons per § 12183 of the ADA.

49. Defendants have discriminated against Plaintiff in violation of Title III of the ADA by: (a) providing benefits at the Impound Lot that are unequal to that afforded to people without disabilities; (b) failing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations of the Impound Lot to individuals with disabilities; (c) failing to take steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services; (d) failing to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable; and (e) where Defendants can demonstrate the removal of architectural barriers is not readily achievable, failing to make the goods, services, facilities, privileges, advantages, or accommodations of the Impound Lot available through alternative methods if such methods are readily achievable.

50. The ability to traverse a path of travel is fundamentally necessary to access and use the Impound Lot. Therefore, the benefits of creating an accessible path of travel does not exceed the cost of readily achievable barrier removal. These costs are fundamental to doing business, like any other essential function of operating a service facility, such as the costs of ensuring fire safety. It is thus readily achievable to remove these barriers.

51. On information and belief, as of the date of Plaintiff's visit to the Impound Lot and as of the filing of this Complaint, Defendants' actions, omissions, policies, and physical premises have denied and continue to deny Plaintiff full and equal access of the Impound Lot and the services provided, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of her disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Impound Lot, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

52. Once the legally-required access has been provided, Mrs. Hancock intends to continue her regular visits to San Francisco including for regular meals at the House of Prime Rib and to enjoy time generally in San Francisco with her family.

53. Plaintiff seeks relief pursuant to remedies set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), and pursuant to Federal Regulations adopted to implement the ADA.

### THIRD CAUSE OF ACTION:
### VIOLATION OF SECTION 504 OF THE REHABILITATION ACT OF 1973
### [29 U.S.C. § 794]
### (Against All Defendants)

57. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporate them herein as if separately repled.

58. At all times relevant to this action, the DOJ regulations implementing the Rehab Act were in full force and effect and applied to the Defendants' conduct.

59. At all times relevant to this action, Plaintiff has had substantial limitations to the major

life activities of walking and standing within the meaning of the Rehab Act regulations, making her a qualified individual with a disability as defined in the Rehab Act.

60. Upon information and belief, at all times relevant to this action, the Defendants and the Impound Lot received federal financial assistance and were therefore programs or activities receiving federal financial assistance pursuant to the Rehab Act.

61. As recipients of federal funds, Defendants and the Impound Lot cannot exclude Plaintiff from participation in, deny Plaintiff the benefits of, or subject Plaintiff to discrimination under any program or activity receiving federal financial assistance. Defendants and the Impound Lot are also required to reasonably accommodate persons with disabilities in their facilities, programs, services, and activities and "afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 45 C.F.R. § 84.4(b)(2).

### FOURTH CAUSE OF ACTION:

### VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 11135

### (Against All Defendants)

64. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporates them herein as if separately replead.

65. Upon information and belief, Defendants and the Impound Lot receive financial assistance from the State of California.

66. Per SFMTA CFO Bree Mawhorter's December 7, 2023 Financial Update, SFMTA received $223.5 million in California operating grants during Fiscal year 2022-2023.[1] This Financial Update confirms that SFMTA's 2022-2023 operating budget was primarily funded by a combination of the San Francisco General Fund, operating grants, and federal assistance. Accordingly, a substantial portion of SFMTA's funding comes through state funding via operating grants.

---

[1] https://www.sfmta.com/sites/default/files/reports-and-documents/2023/11/12-7-23_cac_item_8_financial_update_slide_presentation.pdf

67. Upon information and belief, SFMTA files annual claims for operating assistance with the Metropolitan Transportation Commission for allocation of operating assistance from the Transportation Development Act, State Transit Assistance, AB1107 One-Half Cent Sales Tax, and/or Regional Measure 2 funds to support its operating budget. As such, a substantial portion of SFMTA's operating budget is received via state funds which obligate SFMTA to provide full and equal access to its programs and services at the Impound Lot.

68. Mrs. Hancock is a person with a disability under California Government Code Section 11135.

69. Defendants and the Impound Lot denied Mrs. Hancock full access to the benefits of its programs, activities, services, and accommodations for which Defendant and the Impound Lot receive financial assistance from the State of California, and unlawfully subjected Mrs. Hancock to discrimination under California Government Code Section 11135(a) based on her disabilities.

### FIFTH CAUSE OF ACTION:
### VIOLATION OF UNRUH CIVIL RIGHTS ACT
### [California Civil Code Section 51, *et seq.*]
### (Against Defendant Tegsco and Doe Defendants 11-15)

70. Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all paragraphs of this Complaint and incorporates them herein by reference as if separately repled.

71. Defendants are business establishments within the meaning of the Unruh Act and are the owners and operators of business establishments related to the Impound Lot.

72. Defendants have violated the Unruh Act by their acts and omissions including, but not limited to:

    a. Failing to provide accessible features at the Impound Lot for Mrs. Hancock and others with similar mobility disabilities;

    b. Failing to construct and/or alter the Impound Lot in compliance with state building code and state architectural requirements;

    c. Failing to provide reasonable accommodations/modifications as requested by Mrs. Hancock;

    d.   Failing to modify their policies, procedures, practices, and training as necessary to ensure Mrs. Hancock full and equal access to Defendants' accommodations, advantages, facilities, privileges, or services;

    e.   Failing to maintain existing accessible features, policies, procedures, practices, and/or training;

    f.   Violation of the ADA, a violation of which is a violation of the Unruh Act. Civil Code § 51(f).

73. As a result of Defendants' and their agents' acts and omissions, Plaintiff has experienced physical, policy, and procedure barriers to access at the Impound Lot and its related facilities/premises, all of which have caused her major frustration, embarrassment, discomfort, feelings of inadequacy, difficulty, physical injury, apprehension of injury, and/or other injuries because of the discrimination she experienced and other unlawful acts of the Defendants. She has suffered physically and emotionally as a result.

74. Upon information and belief, the Impound Lot may also be inaccessible in multiple other respects. Upon further investigation and through the discovery process, Plaintiff reserves the right to establish that these barriers relate to her disabilities and will prohibit her from accessing the subject facilities in the future.

75. With respect to Defendants' violations of the Unruh Act that are not predicated on violations of the ADA, Defendants' behavior was intentional: before the construction of or alteration of the subject premises, they were aware of and/or were made aware of their duties to refrain from establishing, creating, and/or allowing discriminatory policies and physical barriers that prevent persons with mobility disabilities from obtaining full and equal access to the subject premises and its accommodations. Plaintiff has complained to Defendants to rectify their discriminatory policies and inaccessible facilities, to no avail. Defendants have thus engaged in willful affirmative misconduct in violating the Unruh Act.

76. At all times herein mentioned, Defendants knew, or in the exercise of reasonable diligence should have known, that their physical barriers, policies, and practices at the Impound Lot violated disabled access requirements and standards, and had a discriminatory impact upon Plaintiff and upon other persons with mobility disabilities, but Defendants failed to rectify the

violations, and presently continue a course of conduct in maintaining policy and architectural barriers that discriminate against Plaintiff and similarly situated disabled persons.

77. Plaintiff's injuries are ongoing and will continue so long as Defendants do not modify their policies and procedures and provide fully accessible facilities for Plaintiff and other people with mobility disabilities.

### PRAYER FOR RELIEF

1. Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff prays for judgment and the following specific relief against Defendants:

2. Issue a declaratory judgment that Defendants' actions, omissions, and failures violate and continue to violate the law, including, but not limited to, the following: failing to construct and/or alter the subject premises in compliance with applicable federal and state access regulations/codes/requirements, failing to remove access barriers where "readily achievable," and failing to make reasonable modifications/accommodations in policy and practice for Plaintiff and other similarly-situated disabled persons;

3. Issue a preliminary and permanent injunction enjoining Defendants, their agents, officials, employees, and all persons and entities acting in concert with them:

    a. From continuing the unlawful acts, conditions, and practices described in this Complaint;

    b.  To provide reasonable modifications/accommodations in policies and practices for persons with mobility disabilities to ensure access to all services and facilities at the Impound Lot;

    c.  To modify the Impound Lot, related facilities, and existing policies and procedures to provide full and equal access to persons with mobility disabilities, including removal of all barriers that violate applicable federal and state access regulations, codes, and requirements;

    d.  To maintain such accessible features once they are provided;

    e.  To train Defendants' employees and agents on how to accommodate the rights and needs of mobility disabled persons; and

    f.  To implement nondiscrimination protocols, policies, and practices to ensure full and equal access for persons with mobility disabilities;

4. Retain jurisdiction over the Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts, omissions, failure to maintain accessible public facilities as complained of herein no longer occur, and cannot recur;

5. Award to Plaintiff all appropriate damages, including, but not limited to, statutory damages, general damages, treble damages, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

6. Award to Plaintiff all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law;

7. Award pre- and post-judgment interest as permitted by law; and

8. Grant any other relief that this Court may deem just and proper.

Dated: September 4, 2024                PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

                                             */s/ Khushpreet Mehton*
                                             BY: KHUSHPREET MEHTON
                                             Attorneys for Plaintiff Pearl Hancock

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Dated: September 4, 2024

PEIFFER WOLF CARR KANE CONWAY & WISE, LLP

*/s/ Khushpreet Mehton*
BY: KHUSHPREET MEHTON
Attorneys for Plaintiff Pearl Hancock